UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NORTHERN INSURANCE COMPANY OF
NEW YORK a/s/o PAIN D'AVIGNON,
    Plaintiff,

    v.                            CIVIL ACTION NO.
                                    08-11089-MBB
AGA FOOD SERVICE INC., FBM
BAKING MACHINES INC. and MICHAEL
HARRIS-WARREN, Individually and
d/b/a HARRIS-WARREN COMMERCIAL
KITCHEN SERVICE,
    Defendants.

**MEMORANDUM AND ORDER RE:
DEFENDANT MICHAEL HARRIS-WARREN'S, D/B/A
HARRIS-WARREN COMMERCIAL KITCHEN SERVICE,
MOTION FOR SUMMARY JUDGMENT
(DOCKET ENTRY # 38)**

**February 24, 2011**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment (Docket Entry # 38) filed by defendant Michael Harris-Warren, individually and d/b/a Harris-Warren Commercial Kitchen Service ("defendant" or "Harris-Warren"), pursuant to Rule 56, Fed. R. Civ. P. Plaintiff Northern Insurance Company of New York a/s/o Pain d'Avignon ("plaintiff") filed a complaint (Docket Entry # 1) against defendant seeking damages for a fire at Pain d'Avignon (the "Bakery"), a commercial bakery in Hyannis, Massachusetts, allegedly resulting from defendant's negligent installation and maintenance of a steam exhaust system for the stoves at the

Bakery. (Docket Entry # 1). The complaint includes a negligence claim (Count VII) and a breach of express and implied warranties claim (Count IX) against defendant.

Plaintiff also brings claims against defendant FBM Baking Machines Inc. ("FBM") and former defendant AGA Food services Inc. ("AGA"),[1] respectively the entities that sold and manufactured the stoves at the Bakery. (Docket Entry # 1). Neither FBM nor AGA filed a motion for summary judgment but both have opposed (Docket Entry ## 42 & 46) the pending motion (Docket Entry # 38) filed by Harris-Warren. Plaintiff also opposes the motion for summary judgment. (Docket Entry # 49). The motion (Docket Entry # 38) is therefore ripe for review.

## STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007). It is appropriate when the summary judgment record shows "there is no genuine issue of material fact, and the moving party

---

[1] A motion was filed (Docket Entry # 18) to substitute Bongard S.A.S., as the actual entity facing liability, for AGA. An order granting the motion to substitute was entered on March 30, 2009. As parties continue to refer to AGA and not to Bongard S.A.S. in their papers, this court proceeds using that designation. It is understood, however, that Bongard S.A.S. and not AGA is the actual party defendant.

is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the nonmoving party." American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Id.

Facts are viewed in favor of the nonmoving party, i.e., plaintiff. Noonan v. Staples, Inc., 556 F.3d 20, 23 (1st Cir. 2009). "Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case is not significantly probative, summary judgment may be granted." Davila, 498 F.3d at 12 (internal quotation marks, citation and ellipses omitted); accord Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (if moving party makes preliminary showing, nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trial-worthy issue" with respect to each element on which he "would bear the burden of proof at trial") (internal quotation marks and citations omitted).

Pursuant to LR. 56.1 the moving party, here Harris-Warren, must submit a statement of undisputed facts. Uncontroverted facts in the LR 56.1 statement comprise part of the summary

judgment record.[2]  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert).  For the purposes of summary judgment the record in the current case consists and includes the following facts.

## FACTUAL BACKGROUND[3]

In June, 2000, the Bakery, located at 192 Airport Road, Hyannis, Massachusetts, purchased a new stove from FBM. (Docket Entry # 39). The stove was manufactured by AGA and installed by FBM alongside two other stoves (also manufactured by AGA) already owned by the Bakery (together: the "stoves"). (Docket Entry # 39). When operating, the stoves produced steam and smoke. (Docket Entry # 39). Initially, the steam and smoke was vented to the roof via three separate vertical ducts, with each one of the ducts connecting to a different individual stove. (Docket

---

[2] Statements of law in the statement of undisputed facts are not considered.  See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990) (legal conclusions not entitled to presumption of truthfulness).

[3] The discussion section includes additional facts where relevant.

Entry # 39). Following the installation of the third stove, there were times when the steam and smoke was not sufficiently vented and the air inside the Bakery would become congested. (Docket Entry # 39).

At some point Harris-Warren, who had done maintenance and repair work on baking equipment at the Bakery since 1998, was contacted to help remedy the problem. (Docket Entry # 39). Harris-Warren suggested that the exhaust system be reconfigured so that the three original vertical ducts were connected via a single horizontal duct about six to eight feet above the stoves, and from there a single vertical duct would connect above the horizontal piece and vent all three stoves to the roof using a single fan to pull the steam and smoke through the ventilation system. (Docket Entry # 39).

The Bakery accepted the proposal for the new exhaust system, and at some point[4] Harris-Warren completed installation. (Docket Entry # 39). No written contract exists between Harris-Warren and the Bakery regarding the design or installation of the new exhaust system. (Docket Entry # 39). Sometime after the initial installation, because the ventilation issues had not been fully remedied, Harris-Warren installed access ports on the horizontal duct work to facilitate cleaning of flour that accumulated in the

---

[4] As will be discussed further, the summary judgment record contains a dispute by the parties as to the date of installation. (Docket Entry ## 39 & 48).

5

horizontal duct and also installed a larger fan.  (Docket Entry # 39).  Harris-Warren purchased the duct work for the exhaust system from Mid Cape Sheet Metal, Inc. with a check dated March 28, 2001, and maintains that the installation occurred within two weeks of the purchase.  Harris-Warren billed the Bakery for the installation and the cost of the materials used to design the exhaust system.

On November 7, 2007, there was a fire at the Bakery. (Docket Entry # 39).  The Hyannis Fire Department ("HFD") responded to the fire and was eventually able to extinguish it. (Docket Entry # 39).  The Bakery, however, had already been damaged by the fire.  A report regarding the fire made by HFD concluded that a cause of the fire was the ignition of flour in the duct work above the stoves.  (Docket Entry # 39).

Plaintiff, at the time of the fire, insured the Bakery. (Docket Entry # 39).  Pursuant to the insurance policy, plaintiff paid the Bakery for the property damage and losses resulting from the interruption to the Bakery's business caused by the fire. Plaintiff, as subrogee of the Bakery, brings the present action seeking recovery of the payments made to the Bakery.  (Docket Entry # 1).

## DISCUSSION

Defendant first argues that summary judgment should be

granted in his favor because the claim is time barred pursuant to Massachusetts General Law chapter 260, section 2B ("section 2B").[5] Section 2B provides inter alia that:

> Actions for tort damages arising out of any deficiency or neglect in the design, planning, construction, or general administration of any improvements to real property . . . shall be commenced within three years after the cause of actions accrues [but] . . . in no event . . . more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvements and the taking of possession for occupancy by the owner.

Mass. Gen. L. ch. 260, § 2B. Defendant asserts that the installation of the exhaust system was completed in March or April 2001. (Docket Entry # 39). Defendant supports this contention by providing receipts for specially fabricated ducts

---

[5] It should be noted that section 2B is characterized as a statute of repose and not as a statute of limitation. As described by the Massachusetts Supreme Judicial Court:

> "'[a] statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered. As a statute of repose, [section 2B], precludes recovery against those within the protection of the statute for any injury which occurs more than six years after the performance or furnishing of the design, planning, construction, or general administration of an improvement to real property. Simply put, after six years, the statute completely eliminates a cause of action against certain persons in the construction industry.'"

Cournoyer v. Massachusetts Bay Transp. Authority, 744 F.2d 208 (1st Cir. 1984) (quoting Klein v. Catalano, 437 N.E.2d 514, 516 (Mass. 1982)).

7

he maintains were ordered to build the exhaust system. (Docket Entry # 52, Ex. 2). The receipts are dated March 2001 and defendant testified during deposition that the exhaust system was built within a few weeks of ordering the fabricated pieces. (Docket Entry # 52, Ex. 3, p. 57). Thus, defendant contends, given the maximum six year statute of repose applicable here pursuant to section 2B, the complaint would need to have been filed no later than March or April 2007. The complaint, however, was not filed until June 26, 2008, over a year after the statute of repose took effect.

Plaintiff, along with FBM and AGA, however, argue that the installation date of the exhaust system is in dispute. (Docket Entry ## 42, 46 & 49). Cleberson Lemos ("Lemos"), the manager of the Bakery, testified during deposition that he could not recall the exact date of the installation but that it was "probably in 2003." (Docket Entry # 45, Ex. 2). Similarly, Vojin Vujosevic ("Vujosevic"), an owner of the Bakery, testified during his deposition that the exhaust system was installed in "2000, 2001, 2002, 2003 . . . I don't remember . . . I would say after the year 2000." (Docket Entry # 52, Ex.4, p. 30).

Defendant mistakenly asserts that a lack of precise and certain recollection on the part of Lemos and Vujosevic does not amount to a factual dispute rendering summary judgment inappropriate. While the record allows for a fact finder to

8

conclude that the exhaust system was installed in March or April 2001 and therefore the six year statute of repose began to run at that time thus making the complaint untimely, a fact finder could also conclude that the exhaust system was installed as late as 2003, thus allowing for the claim to be brought as late as 2009. To allow summary judgment this court would have would to weigh the credibility of the respective deponents and other evidence and to balance the strengths of the parties' proofs to arrive at a factual conclusion. Summary judgment is not the proper vehicle for that kind of a determination on a material fact. See Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 684 (1st Cir. 1994) ("[s]ummary judgment 'admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails'"); accord Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) ("a summary judgment court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder").

Plaintiff, FBM and AGA additionally argue on various grounds that the statute of repose does not apply to the claims against Harris-Warren regardless of the installation date because Harris-Warren did not engage in the type of conduct encompassed by section 2B and/or the statute does not extend to the claim for

breach of an express warranty.[6] The statute of repose, however, does not lead to summary judgment due to the foregoing issue of material fact via-à-vis the installation date. Hence, it is not necessary to address the other arguments Harris-Warren makes that section 2B bars the claims against him (Docket Entry # 40, § I) because even if the statute applied it would not warrant summary judgment in his favor.

Next, defendant argues that it did not have a duty to provide instructions to Bakery employees about the cleaning of the exhaust system it designed and installed because it did not have a contract to perform maintenance or to service the oven or the exhaust system. (Docket Entry # 40, § II). Plaintiff's expert report sets out various theories of liability. One theory proposes that Harris-Warren was negligent because he did not give instructions about cleaning the exhaust system.[7]

Summarizing the relevant facts, Harris-Warren did not just design and install the exhaust system. Rather, the summary judgment record includes evidence that a Harris-Warren employee cleaned the exhaust system. Specifically, in September 2006 the employee noticed a build up of flour in the duct work while

---

[6] The existence of an express warranty presents a genuine issue of material fact.

[7] The argument, if successful, eliminates only one of several theories that support the negligence claim (Count VII).

replacing a hood fan motor. He testified that he told Lemos that he thought it was a fire hazard. The employee also notified Harris-Warren about the fire hazard and that the duct work needed cleaning. Harris-Warren then contacted the Bakery about performing a cleaning and the Bakery agreed to have the duct work cleaned. In early October 2006, the same employee cleaned the flour from the duct work and testified that Lemos was in a position to see him remove the accumulated flour from the duct work. The Harris-Warren employee also showed Lemos the brunt flour that he removed from the duct work. (Docket Entry # 43, Ex. E). Other evidence in the summary judgment record, however, shows that the Bakery did not receive any advice or instruction to clean the duct work. (Docket Entry # 43, Ex. B & C).

In order "[t]o recover for negligence, a plaintiff must show the existence of an act or omission in violation of a duty owed to the plaintiff by the defendant." Coombes v. Florio, 877 N.E.2d 567, 570 (Mass. 2007) (internal ellipses, brackets and quotation marks omitted). The Restatement (Second) of Torts § 388 (1965) ("section 388"):

> imposes a duty to warn upon a supplier (which includes repairmen, see comment c) of a chattel "of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved."

Slate v. Bethlehem Steel Corp., 496 N.E.2d 449, 453 n.6

11

(Mass.App.Ct. 1986) (quoting section 388).

The duct work largely hid the accumulation of flour. It was only by standing on a crate on a forklift and shining a light into a hole at the hood on the top of the oven that the Harris-Warren employee could see the accumulation of flour inside the duct work. Although the record is disputed, it allows for a finding by a fact finder that Harris-Warren did not inform the Bakery about the fire hazard posed by the ongoing accumulation of flour. Such factual circumstances provide a basis to conclude for present purposes that Harris-Warren had no reason to expect that the Bakery would discover and realize the dangerous condition inside the duct work.[8]

Whether the expert report adequately discloses this theory, as argued by Harris-Warren in a footnote (Docket Entry # 40, n.2), is debatable. In any event, the record also provides a basis, although it does not establish, that any such nondisclosure was substantially justified or harmless. See Fed. R. Civ. P. 37(c)(1). The complaint adequately discloses the theory (Docket Entry # 1, ¶ 41(l)) thus reducing any surprise. There is no trial date at the present time and plaintiff might

---

[8] In the event the Harris-Warren employee or Harris-Warren advised the Bakery about the fire hazard, which is disputed, section 388 might not apply. The issue is for the finder of fact.

12

still move to file a supplemental report.[9]  Hence, Harris-Warren's argument based on the expert report does not eviscerate the theory from the case at this time.

The Bobst case cited by Harris-Warren is distinguishable because the work performed by the defendant, a printing press manufacturer, to upgrade a press and install a tachometer did not extend to or include an obligation to synchronize the voltage signal with other devices on the press.  See Hochen v. Bobst Group, Inc., 290 F.3d 446, 454 (1st Cir. 2002).  The improper synchronization purportedly caused the explosion.  Id. at 451-452.  Here, in contrast, Harris-Warren cleaned the flour in the duct work.  Subsequent accumulation of flour in the same duct work may have caused or contributed to the fire.  More specifically, the Deputy Chief of the HFD conducted a cause and origin investigation and prepared a report. The report describes the original fire as occurring inside an oven.  Excess heat from the fire "caused flour in the ductwork" to smoulder and subsequently ignite, according to the report.  (Docket Entry # 45, Ex. G).  One pipe "was 90% blocked."  (Docket Entry # 45, Ex. G).  Consequently, the origin of the fire was in the area cleaned by the Harris-Warren employee.  The record further allows for a finding that Harris-Warren inadequately failed to warn the Bakery

---

[9] This court expresses no opinion on the timeliness of any such report.

about the continued fire hazard or the need to clean the ducts of accumulated flour in the future. Finally, the scope of an implied in fact contract presents a genuine issue of material fact.

Harris-Warren also argues that the lack of adequate instructions to clean the exhaust system was not a proximate cause of the fire. The fire took place approximately 12 to 13 months after the cleaning. As noted above, the report by the Deputy Chief of the HFD found that flour in the duct work and on top of the oven smouldered and eventually ignited. The report also states that, "It appeared that the makeup air duct was also involved in the fire." (Docket Entry # 43, Ex. G). Finally, the October 2006 cleaning resulted from Harris-Warren asking the Bakery if it wanted the duct work cleaned and the Bakery responding affirmatively. The record thus supports a finding that the Bakery would have responded affirmatively to one or more future cleaning requests if advised of the danger and/or adequately instructed of a need to clean the duct work. Summary judgment due to an absence of proximate cause is not appropriate.

Harris-Warren's final basis for summary judgment concerns the breach of warranty claim (Count IX). Harris-Warren maintains that it was not a seller of goods but, instead, provided labor to install the exhaust system.

It is well settled that article two of the Uniform

14

Commercial Code, Mass. Gen. L. ch. 106, §§ 2-101 et seq. ("UCC"), only applies to transactions in goods and not to services. See Mass. Gen. L. ch. 106, § 2-102; White v. Peabody Construction Co., Inc., 434 N.E.2d 1015, 1021-1022 (Mass. 1982); Mattoon v. City of Pittsfield, 775 N.E.2d 770, 784 (Mass.App.Ct. 2002) ("rendition of services is not covered by art. 2 of the code"). Where, as here, a contract mixes both goods and services, the UCC does not apply if "the predominant factor, thrust, or purpose of the contract is the rendition of service, with goods incidentally involved." Mattoon v. City of Pittsfield, 775 N.E.2d at 784 (internal quotation marks and ellipses omitted); accord Cambridge Plating Co., Inc. v. Napco, Inc., 991 F.2d 21, 24 (1st Cir. 1993); see White v. Peabody Construction Co., Inc., 434 N.E.2d at 1021-1022. "[D]etermining the type of contract at issue typically may be a jury function." Cambridge Plating Co., Inc. v. Napco, Inc., 991 F.2d at 24. This case is no exception.

## CONCLUSION

For the foregoing reasons defendant's motion for summary judgment (Docket Entry # 38) is **DENIED.** This court will conduct a status conference on March 14, 2011, at 2:30 p.m.

                             /s/ Marianne B. Bowler
                             **MARIANNE B. BOWLER**

United States Magistrate Judge